James G. Griffin, Esq.
Nevada Bar No: 11584
**LEGAL AID CENTER OF**
**SOUTHERN NEVADA, INC.**
800 S. Eighth Street
Las Vegas, NV 89101
Telephone: (702) 386-1070 x 107
Facsimile: (702) 388-1642
jgriffin@lacsn.org

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| ALICIA L. LIMTIACO | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:11-cv-00370-RLH-PAL |
| vs | ) | |
| | ) | |
| AUCTION CARS.COM, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————— | ) | |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, ALICIA L. LIMTIACO, by and through counsel, James G. Griffin, Esq. of the Legal Aid Center of Southern Nevada, Inc., hereby submits Plaintiff's Motion for Partial Summary Judgment. This Motion is made pursuant to Fed. R. Civ. P. 56, LR 56-1, the Memorandum of Points and Authorities outlined below, as well as the Exhibits attached hereto.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This is an action which arises out of the sale of a used car, on credit, from Defendant, AUCTION CARS.COM (hereinafter, "Defendant"), to Plaintiff, ALICIA L. LIMTIACO (hereinafter, "Plaintiff"). This action is brought by Plaintiff under the federal Truth in Lending

Act, 15 U.S.C. § 1601, *et. seq.*, NRS Chapter 97, and NRS Chapter 104 for actual damages, statutory damages, return of disposition surplus, attorney's fees, and costs.

There is no genuine issue of material fact that the federal Truth in Lending Act applied to the subject transaction and that Defendant included a hidden finance charge in the July 24, 2010 retail installment sales contract, in direct violation of 15 U.S.C. § 1601 *et seq*. entitling Plaintiff to an award of not more than $1,000.00 and not less than $100.00 under that Act.

However, even if this Court cannot find a hidden finance charge as a matter of law, Defendant also violated TILA by failing to disclose the Annual Percentage Rate (APR) of zero (0) percent and failing to include a brief description, such as "the cost of your credit as a yearly rate," in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z, § 226.18(e); failing to disclose the "amount financed," using that term, and failing to include a brief description such as "the amount of credit provided to you or on your behalf," in violation of 15 U.S.C. § 1638(a)(2) and Regulation Z, § 226.18(b); failing to make the terms "finance charge" and "annual percentage rate" more conspicuous than any other disclosure, in violation of 15 U.S.C. § 1632(a) and Regulation Z, § 226.17(a)(2); failing to provide a statement of the consumer's right to obtain, upon request, a written itemization of the amount financed, or fails to automatically disclose itemization of the amount financed, including amounts paid to other persons by the creditor on the consumer's behalf, with those persons identified, in violation of 15 U.S.C. § 1638(a)(2)(B) and Regulation Z, § 226.18(c); and failing to include a separate written itemization of the amount financed, including any amounts paid to other persons by the creditor on the consumer's behalf, specifically, public officials or government agencies, as required by Reg. Z, § 226.18(c)(1)(iii). Because of these omissions, Plaintiff is entitled to an award of not more than $1,000.00 and not less than $100.00 (plus attorney's fees and costs) under that Act.

In addition, there is no genuine issue of material fact that Defendant violated NRS Chapter 97 by failing to use the correct form of contract for credit sales of vehicles in Nevada. Furthermore, Defendant violated NRS Chapter 104 in that Defendant's Notice of Intended Disposition omitted statutorily required information; Defendant failed to provide an accounting to Plaintiff after disposition of the vehicle as well as failed to return the surplus amount to Plaintiff. Based on this, Plaintiff is entitled to summary judgment as to liability statutory damages, and return of disposition surplus.

In the event this Honorable Court grants the relief requested herein (a finding that the Truth in Lending Act applies to the July 24, 2012 retail installment sales contract and statutory damages under that Act of at least $100.00; a finding that Defendant failed to use the form of contract prescribed by NRS Chapter 97, NAC Chapter 97 and that Defendant is not entitled to collect $495.00 in "doc accessories" fees; a finding that Defendant's Notice of Intended Disposition is legally deficient and Plaintiff is entitled to statutory damages under NRS Chapter 104 of at least $499.50; and that Plaintiff is entitled to an unpaid surplus of $1,017.15 following Defendant's disposal of the collateral following repossession), which amounts to a total award of damages of at least $1,612.15, Plaintiff will forego any further relief with the exception of seeking attorney's fees and costs. Accordingly, assuming the requested relief is granted, the Court may well treat the Order on Summary Judgment as a judgment under Fed. R. Civ. P. 54 and so advise the Parties, thereby triggering Plaintiff's request for attorney's fees and costs by motion.

## II.  UNDISPUTED FACTS

1.      Defendant is a "dealer," as defined by NRS 482.020.[1]

---

[1] NRS 482.020 provides, in pertinent part:

3

2.     On July 24, 2010, Defendant obtained Plaintiff's signature on a "Motor Vehicle Purchase Order and Federal Disclosure Statement"[2] for the sale of a for a 1992 GMC Yukon, VIN 1GKEK 18K3NJ716909.

3.     The July 24, 2010 Motor Vehicle Purchase Order and Federal Disclosure Statement states that the vehicle had a selling price of $4,995.00, and that after adding a "doc accessories" fee of $495.00, "title motor vehicle & accessories" fee of $25.25, "sales tax" of $404.60, and a "smog" fee of $30.00, the "cash price" of the vehicle was $5,952.85.[3]

---

1.   "Dealer" or "vehicle dealer" means any person who:
(a) For compensation, money or other thing of value sells, exchanges, buys, offers or displays for sale, negotiates or attempts to negotiate a sale or exchange of an interest in a vehicle subject to registration under this chapter or induces or attempts to induce any person to buy or exchange an interest in a vehicle;
(b) Represents that he or she has the ability to sell, exchange, buy or negotiate the sale or exchange of an interest in a vehicle subject to registration under this chapter or in any other state or territory of the United States;
(c) Receives or expects to receive a commission, money, brokerage fee, profit or any other thing of value from the seller or purchaser of a vehicle; or
(d) Is engaged wholly or in part in the business of selling vehicles or buying or taking in trade vehicles for the purpose of resale, selling or offering for sale or consignment to be sold or otherwise dealing in vehicles, whether or not he or she owns the vehicles.

In its Answer, Defendant states that it is without sufficient information to form a belief as to the truth or falsity of the allegation that it is a "dealer," as defined in NRS 482.020.  However, Defendant is licensed with the Nevada Department of Motor Vehicles as a "dealer."  *See* Department Licensed Businesses, attached hereto as **Exhibit 10.**

[2] *See* Motor Vehicle Purchase Order and Federal Disclosure Statement, attached hereto as **Exhibit 1.**

[3] Id.

4.      The July 24, 2010 Motor Vehicle Purchase Order and Federal Disclosure Statement states that Plaintiff made a down payment of $2,500.00, $500.00 of which was deferred until August 9, 2010.[4]

5.      The July 24, 2010 Motor Vehicle Purchase Order and Federal Disclosure Statement required eighteen (18) "bi-weekly" payments of $191.74 beginning on August 24, 2010, with no interest rate or finance charge disclosed, to pay the contract balance of $3,452.85.[5]

6.      The sale of the vehicle was a sale on credit, as that term is defined in NRS 97.026,[6] of consumer goods

7.      The July 24, 2010 retail installment sales contract has a box for an annual percentage rate (APR) disclosure, but that box is blank.[7]

8.      The July 24, 2010 retail installment sales contract states the "amount financed," and nothing more.[8]

9.      The July 24, 2010 retail installment sales contract states the "finance charge," and nothing more.[9]

10.     The July 24, 2010 retail installment sales contract does not include a statement of the consumer's right to obtain, upon request, a written itemization of the amount financed, or

_____

[4] Id.

[5] Id.

[6] **NRS 97.026 "Credit" defined.** "Credit" means the right granted by a seller to a buyer to defer payment of debt or to incur debt and defer its payment.

[7] *See* Motor Vehicle Purchase Order and Federal Disclosure Statement, attached hereto as **Exhibit 1.**

[8] Id.

[9] Id.

fails to automatically disclose itemization of the amount financed, including amounts paid to other persons by the creditor on the consumer's behalf, with those persons identified.[10]

11.     Plaintiff paid Defendant $2,000.00 in cash toward her down payment.[11]

12.     Plaintiff paid Defendant an additional $700.00 under the terms of the July 24, 2010 Motor Vehicle Purchase Order and Federal Disclosure Statement.[12]

13.     The July 24, 2010 Motor Vehicle Purchase Order and Federal Disclosure Statement states a vehicle selling price of $4,995.00, which was $2,195.00 more than the $2,800.00 Defendant paid to acquire the vehicle.[13]

14.     In 2010, Defendant extended "credit," as that term is defined in 15 U.S.C. § 1602(f), to "consumers," as that term is defined in 15 U.S.C. § 1602(i), payable by written agreements wherein the Defendant is a "creditor," as that term is defined in 15 U.S.C. § 1602(g), in more than four (4) installments, as that term is used in 15 U.S.C. § 1602(g), approximately 50 to 70 times.[14]

15.     On September 29, 2010, Defendant delivered to Plaintiff a Notice of Intention to Sell and Right to Redeem Repossessed Motor Vehicle, dated September 28, 2010.  The Notice of Intention to Sell and Right to Redeem Repossessed Motor Vehicle states a "Total Redemption

[10] Id.

[11] *See* Defendant's Response to Plaintiff's First Set of Interrogatories, Pg. 3, lines 6-11, attached hereto as **Exhibit 2,** and Receipts dated July 24, 2010, attached hereto as **Exhibit 3.**

[12] *See* Defendant's Response to Plaintiff's First Set of Interrogatories, Pg. 3, lines 6-11, attached hereto as **Exhibit 2,** and Receipts dated August 11, 2010, August 19, 2010, and September 14, 2010, attached hereto as **Exhibit 4.**

[13] *See* Defendant's Response to Plaintiff's First Set of Interrogatories, Pg. 4, lines 4-13, attached hereto as **Exhibit 2**, and Premier Auto Auction receipt dated July 7, 2010, attached hereto as **Exhibit 5.**

[14] Id. at Pg. 2, lines 6-8.

Amount" of $3,997.85 and states that the vehicle will be sold in ten days to satisfy that sum, and that the vehicle can only be redeemed during that ten day period.[15]

16.     The September 29, 2010 Notice of Intention to Sell and Right to Redeem Repossessed Motor Vehicle does not state (1) the method of intended disposition; (2) that Plaintiff is entitled to an accounting of the unpaid indebtedness and the charge, if any, for the accounting; and (3) the time and place of a public disposition or the time after which any other disposition is to be made.[16]

17.     The September 29, 2010 Notice of Intention to Sell and Right to Redeem Repossessed Motor Vehicle states that Plaintiff has ten (10) days to redeem the vehicle. [17]

18.     On or about November 2, 2010, Defendant sold the 1992 GMC Yukon, VIN 1GKEK 18K3NJ716909, to Edwin Alexis Parra for a total sales price (including taxes and fees) of $4,085.13.[18]

### III.  SUMMARY OF ARGUMENT

It is undisputed that the nature of the July 24, 2010 transaction makes the federal Truth in Lending Act applicable to the July 24, 2010 retail installment sales contract and that Defendant did not disclose the annual percentage rate (APR) on the July 24, 2010 Motor Vehicle Purchase

---

[15] *See* Notice of Intention to Sell and Right to Redeem Repossessed Motor Vehicle, dated September 28, 2010, attached hereto as **Exhibit 6.**

[16] Id.

[17] Id.

[18] *See* Defendant's Response to Plaintiff's First Set of Interrogatories, Pg. 7, lines 23 – 28, attached hereto as **Exhibit 2** *and* November 2, 2010 Simple Interest Vehicle Contract and Security Agreement, attached hereto as **Exhibit 7.**

Order and Federal Disclosure Statement (hereinafter, "retail installment sales contract"),[19] in violation of 15 U.S.C. § 1638(a)(4).  Furthermore, it is undisputed that Defendant failed to use the correct retail installment sales contract pursuant to NRS Chapter 97.  It is also undisputed that the September 28, 2010 Notice of Intention to Sell and Right to Redeem Repossessed Motor Vehicle (hereinafter, "notice of intended disposition")[20] does not state (1) the method of intended disposition; (2) that Plaintiff is entitled to an accounting of the unpaid indebtedness and the charge, if any, for the accounting; and (3) the time and place of a public disposition or the time after which any other disposition is to be made, and affirmatively states that Plaintiff has ten (10) days to redeem the vehicle in violation of NRS 104.9614 and NRS 104.9623 respectively. Defendant also failed to return to Plaintiff the amount of surplus from the disposition of the vehicle pursuant to NRS 104.9615. These violations entitle Plaintiff to summary judgment under the federal Truth in Lending Act, NRS Chapter 97, and NRS Chapter 104.  Plaintiff is entitled to statutory damages under the federal Truth in Lending Act in an amount not less than $100 and NRS Chapter 104 in an amount not less than the finance charge plus ten percent of the principal amount of the obligation, as well as the amount of the surplus which arose from the disposition of Plaintiff's vehicle.

## IV.  <u>STANDARD OF REVIEW</u>

"The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact." <u>Eldorado Drive v. City of Mesquite</u>, 863 F.Supp. 1252, 1255 (D. Nev., 1994) (*citing* <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 90 S. Ct. 1598, 26

---

[19] *See* Motor Vehicle Purchase Order and Federal Disclosure Statement, attached hereto as **Exhibit 1**.

[20] *See* Notice of Intention to Sell and Right to Redeem Repossessed Motor Vehicle, dated September 28, 2010, attached hereto as **Exhibit 6.**

L.Ed.2d 142 (1970); <u>Zoslaw v. MCA Distrib. Corp.</u>, 693 F.2d 870, 883 (9th Cir., 1982)).  "Once the burden shifts, summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  <u>Sanborn v. Placer County</u>, 80 Fed.Appx. 566, 568 (9th Cir., 2003) (*citing* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  "If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory." <u>Eldorado Drive</u>, 863 F.Supp. at 1255 (*citing* <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 290, 88 S. Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270 (9th Cir., 1979)).

Here, as outlined below, there is no genuine issue of material fact that Defendant failed to comply with the federal Truth in Lending Act, NRS Chapter 97, and NRS Chapter 104 during and after the July 24, 2010 transaction, and Plaintiff is entitled to partial summary judgment as a matter of law.

## V.  ARGUMENT

**A.     THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THE JULY 24, 2010 TRANSACTION WAS REGULATED UNDER THE FEDERAL TRUTH IN LENDING ACT**

TILA applies to individuals or businesses that offer or extend credit when four conditions are met: (1) the credit is offered or extended to consumers; (2) the offering or extension of credit is done regularly; (3) the credit is subject to a finance charge or is payable by a written agreement in more than four installments; and (4) the credit is primarily for personal, family or household purposes.[21]

---

[21] 12 C.F.R. § 226.1(c)(1).

*i.  Plaintiff is a "consumer"*

Plaintiff is a "consumer," as defined in 15 U.S.C. § 1602(h), because she is a natural person and the property, *i.e.* the vehicle, which was the subject of the July 24, 2011 transaction was intended for personal use.

*ii.  Defendant regularly extends "credit."*

TILA defines "credit" as the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.[22]  On July 24, 2010, Defendant extended to Plaintiff a written retail installment sales contract that deferred payment from Plaintiff to Defendant of $3,952.85 on a total balance of $5,952.85 after Plaintiff paid Defendant $2,000.00 toward her down payment.[23]  Defendant extended credit to Plaintiff.[24]

Defendant operates a used vehicle lot located at 3000 E. Lake Mead Blvd., North Las Vegas, NV 89030; Defendant is registered with the Nevada Secretary of State, and Defendant is licensed as a "dealer" with the Nevada Department of Motor Vehicles.  In 2010 alone, Defendant

---

[22] 15 U.S.C. § 1602(e).

[23] *See* July 24, 2010 Motor Vehicle Purchase Order and Federal Disclosure Statement (described herein as "the July 24, 2010 retail installment sales contract), attached hereto as **Exhibit 1.**

[24] *See* Odier v. Hoffman School of Martial Arts, Inc., 619 F.Supp.2d 571, 579 (2008) (Martial arts school's payment agreement in connection with leadership course extended "consumer credit," for purposes of former student's action alleging TILA violations regarding payment dispute; $7,200.00 debt incurred by student arose immediately when she signed agreement, and payment was deferred over thirty-six months, notwithstanding purported lack of interest or finance charges); *Also see* Vines v. Hodges, 422 F.Supp. 1292, 1297-98 (1976) (Even if no finance charge was imposed in connection with sale of used automobile, where sellers granted buyers the right to purchase the car and defer payment of the price, sale was a "credit transaction" to which disclosure provisions of Truth in Lending Act were applicable).

extended credit to consumers approximately 50 to 70 times.[25]  Defendant regularly extends credit.

### iii.  The credit was payable by a written agreement in "more than four installments."

The terms of the July 24, 2010 retail installment sales contract are as follows:  Eighteen (18) "bi-weekly" payments of $191.74 beginning on August 24, 2010, with no interest rate or finance charge disclosed, to pay the contract balance of $3,452.85.[26]  The July 24, 2010 retail installment sales contract is a written agreement payable in more than four installments.

### iv.  The credit was "primarily for personal, family, or household purposes."

Plaintiff planned on using the vehicle she purchased from Defendant on credit for personal use, *e.g.* travelling to and from work, running errands, etc.[27]  The credit was for personal purposes.

• • •

Although Plaintiff's hidden finance charge claim will be discussed below, this Court need not reach that claim in order to find that the federal Truth in Lending Act applied to the July 24, 2010 transaction.  There is no genuine issue of fact as to whether the federal Truth in Lending Act applied to the July 24, 2010 transaction because (1) Defendant extended credit to Plaintiff; (2) Defendant regularly extends credit to consumers; (3) the credit was payable in more than four

---

[25] Defendant's Response to Plaintiff's First Set of Interrogatories, Pg. 2, lines 6-8, attached hereto as **Exhibit 2.**

[26] *See* Motor Vehicle Purchase Order and Federal Disclosure Statement, attached hereto as **Exhibit 1**.

[27] *See* Affidavit of Alicia L. Limtiaco, attached hereto at pg. 1, lines 23-25, attached hereto as **Exhibit 8**. An owner of property is competent to testify as to its value.  State ex rel. Dept. of Highways v. Wells Cargo, Inc., 82 Nev. 82, 85, 411 P.2d 120, 121-22 (1966) (*citing* Puget Sound Power & L. Co. v. Public Utility Dist., No. 1, 123 F.2d 286 (9th Cir., 1941)).

installments; and (4) Plaintiff used the credit for personal purposes.[28]  Plaintiff is entitled to summary judgment on the applicability of the federal Truth in Lending Act to the July 24, 2010 transaction.

**B.** **THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER DEFENDANT VIOLATED THE DISCLOSURE REQUIREMENTS OF THE FEDERAL TRUTH IN LENDING ACT**

The unlawful omissions from the July 24, 2010 retail installment sales contract are clear on the face of the contract and there is no genuine issue of material fact that the federal Truth in Lending Act (TILA) requires these disclosures and that Defendant failed to make these disclosures.

*i. Annual Percentage Rate*

Even if this Court cannot find as a matter of law that the July 24, 2010 retail installment sales contract contained a hidden finance charge, Defendant *still* failed to disclose the 0% annual percentage rate (APR) and include a brief description, such as "the cost of your credit as a yearly rate," in violation of 15 U.S.C. § 1638(a)(2) and Regulation Z § 226.18(e).  The July 24, 2010 retail installment sales contract leaves the APR disclosure blank and has no semblance of the language required by Regulation Z.[29]

Defendant will likely argue that because there was no finance charge, it was not required to disclose a finance charge.  There is no authority for this position in TILA or caselaw.  In fact, Courts have routinely found the opposite to be true. In <u>Odier v. Hoffman School of Martial Arts, Inc.</u>, 619 F.Supp.2d 571, 579 (2008), the United States District Court, Northern District of Indiana, found that a martial arts school's payment agreement in connection with leadership

---

[28] 12 C.F.R. § 226.1(c)(1).

[29] *See* Motor Vehicle Purchase Order and Federal Disclosure Statement, attached to hereto as **Exhibit 1**.

12

course extended "consumer credit," for purposes of former student's action alleging TILA violations regarding payment dispute; $7,200.00 debt incurred by student arose immediately when she signed agreement, and payment was deferred over thirty-six months, *notwithstanding purported lack of interest or finance charges*.  In <u>Vines v. Hodges</u>, 422 F.Supp. 1292, 1297-98 (1976), the United States District Court, District of Columbia found that *even if no finance charge was imposed in connection with sale of used automobile*, where sellers granted buyers the right to purchase the car and defer payment of the price, sale was a "credit transaction" to which disclosure provisions of Truth in Lending Act were applicable.  In <u>Manzina v. Publisher's Guild, Inc.</u>, 386 F.Supp 241, 244 (1974), the United States District Court, S.D. New York, found that "[t]he mere fact that a transaction falls within the TILA rules relating to consumer credit transactions, however, does not mean that it necessarily involves a finance charge."  (*citing* <u>Mourning v. Family Publications Service, Inc.</u>, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973) (wherein the United States Supreme Court found the "four or more" rule to be within the discretion of the Federal Reserve Board to promulgate and not prohibited by the Fifth Amendment as establishing a conclusive presumption of determinative facts).

There is no genuine issue of material fact that Defendant violated 15 U.S.C. § 1638(a)(2) and Regulation Z § 226.18(e).

### ii. Amount Financed

Even if this Court cannot find as a matter of law that the July 24, 2010 retail installment sales contract contained a hidden finance charge, Defendant *still* failed to comply with Regulation Z § 226.18(b) by not including a brief description of the amount financed, such as "the amount of credit provided to you or on your behalf," in the July 24, 2010 retail installment

sales contract.  The July 24, 2010 retail installment sales contract states the "amount financed," and nothing more.[30]

There is no genuine issue of material fact that Defendant violated Regulation Z § 226.18(b) by failing to include a legally sufficient description of the amount financed.

### iii. Finance Charge

Even if this Court cannot find as a matter of law that the July 24, 2010 retail installment sales contract contained a hidden finance charge, Defendant *still* failed to comply with Regulation Z § 226.18(d) by not including a brief description of the finance charge, such as "the dollar amount the credit will cost you," in the July 24, 2010 retail installment sales contract.  The July 24, 2010 retail installment sales contract states the "finance charge," and nothing more.[31]

There is no genuine issue of material fact that Defendant violated Regulation Z § 226.18(d) by failing to include a legally sufficient description of the amount financed.

### iv. Itemization of Amount Financed

Even if this Court cannot find as a matter of law that the July 24, 2010 retail installment sales contract contained a hidden finance charge, Defendant *still* failed to comply with 15 U.S.C. § 1638(a)(2)(B) and Regulation Z § 226.18(c) by not including a statement of the consumer's right to obtain, upon request, a written itemization of the amount financed, or fails to

---

[30] *See* Motor Vehicle Purchase Order and Federal Disclosure Statement, attached hereto as **Exhibit 1**.

[31] *See* Motor Vehicle Purchase Order and Federal Disclosure Statement, attached hereto as **Exhibit 1**.

14

1    automatically disclose itemization of the amount financed, including amounts paid to other

2    persons by the creditor on the consumer's behalf, with those persons identified.[32]

3         There is no genuine issue of material fact that Defendant violated 15 U.S.C. §

4    1638(a)(2)(B) and Regulation Z § 226.18(c) by failing to include a legally sufficient description

5    of the amount financed.

6

7                      . . .

8         There is no genuine issue of material fact that Plaintiff is entitled to statutory damages as

9    a result of Defendant's violations of TILA, as outlined above.  Pursuant to 15 U.S.C. §

10    1640(a)(2)(a)(i), because Defendant violated 15 U.S.C. § 1638(a)(2) and 15 U.S.C. §

11    1638(a)(2)(B), respectively, by (1) failing to disclose the APR in the July 24, 2010 retail

12    installment sales contract; and (2) failing include an itemization of the amount financed or a

13    statement of the consumer's right to obtain a written itemization of the amount financed in the

14    July 24, 2010 retail installment sales contract, Plaintiff is entitled to an award of statutory

15    damages.  15 U.S.C. § 1640(a)(2)(a)(i) provides, in regard to statutory damages:

16

17            [I]n the case of an individual action twice the amount of any

18            finance charge in connection with the transaction, (ii) in the case of

19            an individual action relating to a consumer lease under part E of
             this subchapter, 25 per centum of the total amount of monthly

20            payments under the lease, except that the liability under this

21            subparagraph shall not be less than $100 nor greater than $1,000
             . . .

22

23         Thus, even if this Court cannot find as a matter of law that the July 24, 2010 retail

24    installment sales contract contained a hidden finance charge, this Court is within its discretion to

25

26

27    _____

[32] *See* Motor Vehicle Purchase Order and Federal Disclosure Statement, attached hereto as

28    **Exhibit 1**.

award Plaintiff up to $1,000.00 in statutory damages, but in no instance less than $100.00 in statutory damages.

**C.      THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER DEFENDANT INCLUDED A HIDDEN FINANCE CHARGE IN THE JULY 24, 2010 RETAIL INSTALLMENT SALES CONTRACT**

Plaintiff has adequately demonstrated that Defendant, with no justifiable basis other than attempting to disguise a credit sale as a cash sale, included a hidden finance charge in the July 24, 2010 retail installment sales contract. The Kelley Blue Book lists the suggested retail value of a 1992 GMC Yukon in substantially the same condition with the same accessories at $3,745.00.[33]  Yet, Defendant paid $2,800.00 (plus a $130.00 "buy fee") to acquire the vehicle[34] from an auto auction and charged Plaintiff $4,995.00 for the vehicle, which is $1,250.00 above the suggested retail value of the vehicle.  There is no genuine issue of material fact that the $1,250.00 difference between the suggested retail value of the vehicle and the cash selling price amounts to a hidden finance charge.

This Court would not be alone in finding that the $1,250.00 difference in the vehicle's suggested retail price and the vehicle selling price charged by Defendant was, in fact, a hidden finance charge.  In Lawson v. Reeves, 537 So.2d 15, 16 (Ala., 1988), the Supreme Court of Alabama held ". . . that a claim for relief exists under the federal Truth-in-Lending Act, 15 U.S.C. § 1601 *et. seq.*, for non-disclosure of hidden finance charges, when the installment sales contract does not disclose an annual percentage rate, but the stated price exceeds the actual value

---

[33] *See* Affidavit of Alicia L. Limtiaco, attached hereto at pg. 3, lines 2-7, attached hereto as **Exhibit 8**, and selected pages from Kelley Blue Book Official Guide for Older Cars, May-August 2010, Les Kelley, Paul C. Johnson, *Kelley Blue Book Official Guide for Older Cars*, May-August 2010 (Kelley Blue Book Co., 2010), attached hereto as **Exhibit 9**.

[34] *See* Defendant's Response to Plaintiff's First Set of Interrogatories, Pg. 4, lines 4-13, attached hereto as **Exhibit 2**, and Premier Auto Auction receipt dated July 7, 2010, attached hereto as **Exhibit 5**.

16

of the item sold."  In <u>Killings v. Jeff Motors, Inc.</u>, the United States Court of Appeals for the Fifth Circuit found that a difference of $325.28 between the average retail price and the cash price of a vehicle amounted to an undisclosed finance charge.  490 F.2d 865, 866 (5th Cir., 1974).  In <u>Vines v. Hodges</u>, the United States District Court, District of Columbia, agreed with the Plaintiff-consumers that a difference of $720 between the average retail price of a vehicle and the price charged was a "buried finance charge."  422 F.Supp. 1292, 1300 (1976).  In <u>Stewart v. Credithrift of America Consumer Discount Co., Inc.</u>, the United States Bankruptcy Court, E.D. of Pennsylvania, found that the difference between ". . . the articulated unpaid balance of the cash price ($1,900.00) and the 'real' cash price ($867.00) was a $1,033.00 "hidden" finance charge.  93 B.R. 878, 883 (1988).

. . .

Here, there are grounds for the Court to ". . . [look] past the form of the transactions to their economic substance in deciding whether [TILA] applie[s]," because ". . . the Truth in Lending Act is liberally construed to protect consumers . . ."[35]  There is no genuine issue of material fact that the Defendant included a hidden finance charge in the July 24, 2010 retail installment sales contract and Plaintiff is entitled to summary judgment as to liability only on that claim with damages under TILA to be determined at trial.

/ / /

/ / /

/ / /

/ / /

---

[35] <u>Burnett v. Ala Moana Pawn Shop</u>, 3 F.3d 1261, 1262 (9th Cir., 1993) (*citing* <u>Ford Motor Credit Co. v. Cenance</u>, 452 U.S. 155, 157-58, 101 S.Ct. 2239, 2240-41, 68 L.Ed.2d 744 (1981)).

**D.    THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT DEFENDANT VIOLATED NRS CHAPTER 97 BY FAILING TO USE THE CORRECT FORM OF CONTRACT FOR CREDIT SALES OF VEHICLES IN NEVADA**

On July 24, 2010, Defendant presented Plaintiffs with a retail installment sales contract that was not the form of contract required to be used in the State of Nevada for sales of vehicles on credit, as required by NRS 97.299.[36]  NRS 97.299 provides, in pertinent part:

> 1.  The Commissioner of Financial Institutions shall prescribe, by regulation, forms for the application for credit and contracts to be used in the sale of vehicles if:
>> (a) The sale involves the taking of a security interest to secure all or a part of the purchase price of the vehicle;
>> (b) The application for credit is made to or through the seller of the vehicle;
>> (c) The seller is a dealer; and
>> (d) The sale is not a commercial transaction.

The July 24, 2010 transaction involved the taking of a security interest (the vehicle) to secure part of the purchase price of the vehicle, the application for credit was made to the seller of the vehicle (Defendant), Defendant is a "dealer" as defined by NRS 482.020[37], and the sale of the

---

[36] *See* Motor Vehicle Purchase Order and Federal Disclosure Statement, attached hereto as **Exhibit 1**.

[37] NRS 482.020 provides, in pertinent part:

> 1.  "Dealer" or "vehicle dealer" means any person who:
> (a) For compensation, money or other thing of value sells, exchanges, buys, offers or displays for sale, negotiates or attempts to negotiate a sale or exchange of an interest in a vehicle subject to registration under this chapter or induces or attempts to induce any person to buy or exchange an interest in a vehicle;
> (b) Represents that he or she has the ability to sell, exchange, buy or negotiate the sale or exchange of an interest in a vehicle subject to registration under this chapter or in any other state or territory of the United States;
> (c) Receives or expects to receive a commission, money, brokerage fee, profit or any other thing of value from the seller or purchaser of a vehicle; or
> (d) Is engaged wholly or in part in the business of selling vehicles or buying or taking in trade vehicles for the purpose of resale,

18

vehicle was a sale on credit of consumer goods, not a commercial transaction.  Accordingly, Defendant was required to use the form of contract prescribed by the Commissioner of Financial Institutions for the sale of vehicles.

The form of contract prescribed by the Commissioner of Financial Institutions for the sale of vehicles can be found in NAC 97.110.  NAC 97.110 provides, in pertinent part:

> Except as specifically provided in NAC 97.135 for the sale of any vehicle described in that section, the following form of contract for sale and security agreement **must**[38] be used in any sale of a vehicle if the sale is governed by the provisions of NRS 97.299 and simple interest is to be paid in connection with the sale:
> (Emphasis added.)

An example of the contract that must be used in sales of vehicles governed by NRS 97.299, as was the subject transaction, can be found in the November 2, 2010 Simple Interest Vehicle Contract and Security Agreement, attached hereto as **Exhibit 7**.  Defendant did not use the form of contract required by NRS 97.299 and found in NAC 97.110.  Therefore, by presenting Plaintiffs with a form of contract that did not match the contract prescribed by the Commissioner of Financial Institutions, Defendant violated NRS 97.299 and NAC 97.110.

. . .

There is no genuine issue of material fact regarding Defendant's obligation to use the form of contract found in NAC Chapter 97 and Defendant's failure to do so.  Defendant's failure to use the form of contract prescribed by bars Defendant from ". . . recovery of any finance

---

> selling or offering for sale or consignment to be sold or otherwise dealing in vehicles, whether or not he or she owns the vehicles.

[38] *Also see* NRS 97.301, which provides:

> When a vehicle is sold in this state under the circumstances described in subsection 1 of NRS 97.299, the seller and any lender to whom the application for credit is made shall use the forms prescribed pursuant to that section.

charge, official fees, or any charge for delinquency or collection under or in connection with the related retail installment contract or purchase under a retail charge agreement . . ."  NRS 97.305. Plaintiff is entitled to summary judgment on her claims under NRS Chapter 97, specifically, that Defendant is barred from collection of the $495.00 in "doc accessories" fees charged to Plaintiff in the July 24, 2010 retail installment sales contract,[39] as well as the $50.00 demanded in Defendant's notice of intended disposition.[40]

**E.   THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT THE NOTICE OF INTENDED DISPOSITION PROVIDED BY DEFENDANT TO PLAINTIFF CONTAINS UNLAWFUL OMISSIONS.**

There is no genuine issue of material fact that Defendant's notice of intended disposition failed to comply with NRS Chapter 104.  Following Defendant's repossession of the vehicle, Defendant was required to provide Plaintiff with a statutorily compliant notice of intent to dispose of collateral (Notice of Intended Disposition).  NRS 104.9613[41] sets forth notification requirements for commercial transactions while NRS 104.9614[42] sets forth notification requirements for consumer transactions.  There is no question that the July 24, 2010 transaction was a consumer-goods transaction, therefore NRS 104.9614 is the applicable provision of NRS Chapter 104.  NRS 104.9614(1)(a) requires that a proper notice before disposition of collateral

---

[39] *See* Motor Vehicle Purchase Order and Federal Disclosure Statement, attached hereto as **Exhibit 1**.

[40] *See* Notice of Intention to Sell and Right to Redeem Repossessed Motor Vehicle, dated September 28, 2010, attached hereto as **Exhibit 6.**

[41] "**NRS 104.9613 Contents and form of notification before disposition of collateral: General.** Except in a consumer-goods transaction, the following rules apply: . . ."  NRS 104.9613 (emphasis added).

[42] "**NRS 104.9614 Contents and form of notification before disposition of collateral: Consumer-goods transaction.** In a consumer-goods transaction, the following rules apply: . . ." NRS 104.9614 (emphasis added).

contain the information specified in NRS 104.9613(1).  NRS 104.9613(1) provides, in pertinent part:

> The contents of a notification of disposition are sufficient if the notification:
>
> (a) Describes the debtor and the secured party;
>
> (b) Describes the collateral that is the subject of the intended disposition;
>
> (c) States the method of intended disposition;
>
> (d) States that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and
>
> (e) States the time and place of a public disposition or the time after which any other disposition is to be made.

While the information required to be contained in a Notice of Intended Disposition in a commercial transaction and a consumer transaction is similar, the purpose, policy, and compliance requirement behind the notice in a consumer transaction is much different.  These differences are illustrated by the fact that while errors in information required by paragraph (1) may be deemed reasonable in a commercial transaction,[43] an error in such information in a consumer transaction is not allowed. The requirement for strict statutory compliance in a consumer transaction is clearly set forth in Official Comment 2 to the Uniform Commercial Code § 9-614 which states, "[p]aragraph (1) sets forth the information required for a reasonable notification in a consumer-goods transaction. A notification that lacks any of the information set forth in paragraph (1) is *insufficient as a matter of law*. (Emphasis added).  In <u>Knights of Columbus Credit Union v. Stock</u>, the Court of Appeals of Texas, stated:

> Section 9.504 [current Section 9.614] clearly requires notice of the time and place of a public sale or notice of the time after which a private sale will take place. The letter did not give notice of the

---

[43] *See* Official Comment 2 to the Uniform Commercial Code § 9-613.

> time and place of a public sale nor the time after which a private
> sale would occur. . . We hold as a matter of law that the letter did
> not provide the required "reasonable notification" of the proposed
> disposition of the collateral. The trial court correctly ruled that the
> letter was insufficient.

814 S.W.2d 427, 430 (Tex. App. 1991).

On or about September 28, 2010, Defendant sent to Plaintiff a notice of intended disposition that failed to state (1) the method of intended disposition, (2) that Plaintiff was entitled to an accounting of the unpaid indebtedness and a charge, if any, for the accounting, and (3) the time and place of a public disposition or the time after which any other disposition is to be made.[44]   In omitting three out of five pieces of statutorily required information, Defendant failed, as a matter of law, to provide Plaintiff with a sufficient Notice of Intended Disposition, in violation of NRS 104.9614.

While NRS 104.9614(5) provides that errors in the notice will not cause the notice to be found insufficient unless the error is misleading, this language is only half of the statute and is only true *if* the error is in information *not* required by Subsection 1. Official Comment 3 to the Uniform Commercial Code § 9-614 states, "[p]aragraph (5) provides that non-misleading errors in information contained in a notification are permitted if the safe-harbor form is used *and if the errors are in information not required by paragraph (1)*." (Emphasis in original). "Because the notice failed to provide accurate information concerning the method of intended disposition of the vehicle . . . the trial court did not err in holding that American General's notification to Woods-Witcher was insufficient . . ." Am. Gen. Fin. Services, Inc. v. Woods-Witcher, 294 Ga. App. 685, 687, 669 S.E.2d 709, 711 (2008).

---

[44] *See* Notice of Intention to Sell and Right to Redeem Repossessed Motor Vehicle, dated September 28, 2010, attached to Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment as **Exhibit 6.**

Here, Defendant did not use the safe-harbor form provided in NRS 104.9614(3). Defendant did not make minor, or "non-misleading," errors regarding amounts due and owing, dates, or the location of disposition. **Instead, Defendant completely omitted portions of content required by NRS 104.9614 paragraph 1**, namely, Defendant failed to state (1) the method of intended disposition, (2) that Plaintiff was entitled to an accounting of the unpaid indebtedness and a charge, if any, for the accounting, and (3) the time and place of a public disposition or the time after which any other disposition is to be made.[45]  Defendant will likely argue that it provided an accounting[46] in its Notice of Intended Disposition and that it was under no obligation to inform Plaintiff of the method of its disposal of the collateral because it did not intend to pursue Plaintiff for a deficiency.  There are no exceptions in NRS Chapter 104 for failing to provide a consumer with the information specified in NRS 104.9614.

Furthermore, Defendant states in the notice of intended disposition that Plaintiff had ten (10) days to pay Defendant $5,848.94 to regain possession of the vehicle, *i.e.* redeem the collateral.[47]  This is in direct contradiction with NRS 104.9623(b), which specifically allows

---

[45] *See* Notice of Intention to Sell and Right to Redeem Repossessed Motor Vehicle, dated September 28, 2010, attached hereto as **Exhibit 6.**

[46] Surely, that accounting would have changed (additional storage and late fees) between September 28, 2010, the date of Defendant's notice of intended disposition, and October 8, 2010, the last day Defendant gave Plaintiff to redeem her vehicle – where was Plaintiff to obtain an accounting of the amount owed on October 8, 2010, and how much would she have been charged for that accounting?  Plaintiff does not know, because Defendant did not include this statutorily required information in its notice of intended disposition.

[47] *See* Notice of Intention to Sell and Right to Redeem Repossessed Motor Vehicle, dated September 28, 2010, attached hereto as **Exhibit 6** (wherein Defendant states, ". . . NOTICE IS HEREBY GIVEN of the undersigned's intent to sell the repossessed vehicle at the expiration of ten (10) days from the date this notice was mailed, and of said period paying to the undersigned the TOTAL REDEMPTION AMOUNT . . .)

23

redemption to occur at any time before the secured party has disposed of the collateral.[48]  By stating that Plaintiff had ten days to pay Defendant $5,848.94 to regain possession of the vehicle, when by law, Plaintiff could redeem the collateral at any time before Defendant sold the vehicle, Defendant violated NRS 104.9623.

. . .

The omissions and misrepresentations in the Notice of Intended Disposition Defendant provided to Plaintiff alone, even assuming *arguendo* that Defendant rightfully repossessed Plaintiff's vehicle, entitles Plaintiff to statutory damages under NRS 104.9625(3)(b).  NRS 104.9625(3)(b) provides that a debtor has a right to recover statutory damages in "an amount ***not less than*** the credit service charge plus 10 percent of the principal amount of the obligation." (Emphasis added.)  Even if this Court cannot find as a matter of law that the July 24, 2010 retail installment sales contract contained a hidden finance charge, Plaintiff is entitled to an award of statutory damages for NRS Chapter 104 notice violations.  If the Court finds that the July 24, 2010 contract did not have a finance charge, the amount of statutory damages Plaintiff is entitled to is no less than ten percent of the principal ($4,995.00), or $499.50.

There is no genuine issue of material fact that the Defendant's Notice of Intended Disposition does not comply with the requirements of NRS Chapter 104, and is therefore

---

[48] NRS 104.9623 provides, in pertinent part:

> A debtor, any secondary obligor or any other secured party or lienholder may redeem collateral . . .
> 3.  A redemption **may occur at any time before** a secured party:
> (a) Has collected collateral under NRS 104.9607;
> (b) Has disposed of collateral or entered into a contract for its disposition under NRS 104.9610; or
> (c) Has accepted collateral in full or partial satisfaction of the obligation it secures under NRS 104.9622.
> (Emphasis added.)

insufficient as a matter of law.  Therefore, Plaintiff is entitled to summary judgment as to

liability on her claim under NRS Chapter 104 with damages to be determined at trial, but in no

instance less than the statutory minimum.

**F.     THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT DEFENDANT IS ENTITLED TO THE SURPLUS THAT AROSE FROM THE DISPOSITION OF THE VEHICLE**

Pursuant to NRS 104.9615, Defendant was required to account for and pay Plaintiff any

surplus amount that resulted from the disposition of the vehicle.  "If the security interest under

which a disposition is made secures payment or performance of an obligation, after making the

payments and applications required by subsection 1 and permitted by subsection 3 . . . the

secured party shall account to and pay a debtor for any surplus."  NRS 104.9615(4)(a).  In

Chemtex, LLC v. St. Anthony Enterprises, Inc. the United States District Court, Southern

District of New York, held:

> [I]n the event any surplus money was generated by a sale of [debtor's] assets (over and above the amount needed to satisfy [debtor's] obligations to [secured party]), [secured party] would have been obligated only to make an accounting to [debtor] and pay over to [debtor] any such surplus.

490 F. Supp. 2d 536, 549 (S.D.N.Y. 2007).

On or about September 26, 2010, the date Defendant repossessed the vehicle from

Plaintiff, Plaintiff owed Defendant a remaining balance of $2,757.85 on the July 24, 2010 retail

installment sales contract (total cash price (including fees and taxes) of $5,952.85 minus

$2,000.00 down payment, [49] minus $700.00 in payments made under the contract, [50] minus

---

[49] *See* Defendant's Response to Plaintiff's First Set of Interrogatories, Pg. 3, lines 6-11, attached hereto as **Exhibit 2**, and Receipts dated July 24, 2010, attached hereto as **Exhibit 3.**

[50] *See* Defendant's Response to Plaintiff's First Set of Interrogatories, Pg. 3, lines 6-11, attached hereto as **Exhibit 2**, and Receipts dated August 11, 2010, August 19, 2010, and September 14,

25

$495.00 in uncollectable "doc accessories" fees,[51] equals $2,757.85). After repossessing the vehicle from Plaintiff, Defendant sold the vehicle to Edwin Alexis Parra for $3,775.00.[52] Thus, Plaintiff was entitled to a surplus of $1,017.15,[53] and pursuant to NRS 104.9615(2)(a), Defendant was required to pay that surplus to Plaintiff.

· · ·

There is no genuine issue of material fact that Defendant failed to provide Plaintiff with an accounting of the surplus following disposition to which she was statutorily entitled under NRS Chapter 104. Furthermore, Plaintiff is entitled to recover the amount of the surplus pursuant to NRS 104.9615(4)(a) which is $1,017.15.

## VI.  <u>CONCLUSION</u>

Based on the foregoing, Plaintiff has demonstrated that there is no genuine issue of material fact that the federal Truth in Lending Act applied to the subject transaction; Plaintiff has demonstrated that there is no genuine issue of material fact that Defendant included a hidden finance charge, in violation of 15 U.S.C. § 1638(a), in the July 24, 2010 retail installment sales contract; and that Plaintiff is entitled to an award of no more than $1,000.00, but not less than $100.00 under that Act. However, even if this Court cannot find a hidden finance charge as a matter of law, Defendant also violated TILA by failing to disclose the Annual Percentage Rate

2010, attached to Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment as **Exhibit 4.**

[51] *See* Subsection E, above.

[52] *See* Defendant's Response to Plaintiff's First Set of Interrogatories, Pg. 7, lines 23 – 28, attached hereto as **Exhibit 2** *and* November 2, 2010 Simple Interest Vehicle Contract and Security Agreement, attached hereto as **Exhibit 7**.

[53] Even accounting for Defendant's alleged Repossession Expense ($495.00) in the Notice of Intention to Sell and Right to Redeem Repossessed Motor Vehicle, dated September 28, 2010, attached hereto as **Exhibit 6**, Plaintiff was entitled to a surplus of $522.15.

1  (APR) of zero (0) percent and failing to include a brief description, such as "the cost of your

2  credit as a yearly rate," in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z, § 226.18(e);

3  failing to disclose the "amount financed," using that term, and failing to include a brief

4  description such as "the amount of credit provided to you or on your behalf," in violation of 15

5  U.S.C. § 1638(a)(2) and Regulation Z, § 226.18(b); failing to make the terms "finance charge"

6  and "annual percentage rate" more conspicuous than any other disclosure, in violation of 15

7  U.S.C. § 1632(a) and Regulation Z, § 226.17(a)(2); failing to provide a statement of the

8  consumer's right to obtain, upon request, a written itemization of the amount financed, or fails to

9  automatically disclose itemization of the amount financed, including amounts paid to other

10  persons by the creditor on the consumer's behalf, with those persons identified, in violation of 15

11  U.S.C. § 1638(a)(2)(B) and Regulation Z, § 226.18(c); and failing to include a separate written

12  itemization of the amount financed, including any amounts paid to other persons by the creditor

13  on the consumer's behalf, specifically, public officials or government agencies, as required by

14  Reg. Z, § 226.18(c)(1)(iii).  Because of these omissions, Plaintiff is entitled to an award of not

15  more than $1,000.00 and not less than $100.00 (plus attorney's fees and costs) under that Act.

16      Plaintiff has also shown that there is no genuine issue of material fact that Defendant

17  violated NRS Chapter 97 by failing to use the correct form of contract for credit sales of vehicles

18  in Nevada.  In addition, Defendant's notice of intended Disposition failed to comply with NRS

19  Chapter 104, and Defendant failed to provide the requisite accounting to Plaintiff and did not

20  return the surplus amount to Plaintiff.  Therefore, Plaintiff is entitled to summary judgment as to

21  liability under these theories, statutory damages under NRS Chapter 104 of not less than the

22  finance charge plus ten percent of the principal amount of the obligation, and a return of the

23  surplus in the amount of $1,017.15.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Again, in the event this Honorable Court grants the relief requested herein (a finding that the Truth in Lending Act applies to the July 24, 2012 retail installment sales contract and statutory damages under that Act of at least $100.00; a finding that Defendant failed to use the form of contract prescribed by NRS Chapter 97, NAC Chapter 97 and that Defendant is not entitled to collect $495.00 in "doc accessories" fees; a finding that Defendant's Notice of Intended Disposition is legally deficient and Plaintiff is entitled to statutory damages under NRS Chapter 104 of at least $499.50; and that Plaintiff is entitled to an unpaid surplus of $1,017.15 following Defendant's disposal of the collateral following repossession), which amounts to a total award of damages of at least $1,612.15, Plaintiff will forego any further relief with the exception of seeking attorney's fees and costs.  Accordingly, assuming the requested relief is granted, the Court may well treat the Order on Summary Judgment as a judgment under Fed. R. Civ. P. 54 and so advise the Parties, thereby triggering Plaintiff's request for attorney's fees and costs by motion.

Dated this 23<u>rd</u> day of May, 2012.

**LEGAL AID CENTER OF**
**SOUTHERN NEVADA, INC.**


   __/s/   James G. Griffin_____
JAMES G. GRIFFIN, ESQ.
Nevada Bar No: 11584
800 S. Eighth Street
Las Vegas, NV  89101
Attorney for Plaintiff

## <u>CERTIFICATE OF MAILING</u>

I HEREBY CERTIFY that I am an employee of Legal Aid Center of Southern Nevada,

Inc., and that on the   23<u>rd</u>   day of May, 2012, I placed a true and correct copy of the foregoing

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** in the United States

Mail, in Las Vegas, Nevada, with First Class Postage pre-paid thereon, and addressed to the

following:

Karl J. Andersen, Esq.
10161 Park Run Dr., #150
Las Vegas, NV 89145


                          /s/  Rosie Najera
                          An employee of Legal Aid Center of Southern Nevada

29