1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ALICIA L. LIMTIACO,

Plaintiff,

v.

AUCTION CARS.COM, LLC,

Defendant.

Case No. 2:11-cv-00370-MMD-PAL

ORDER

(Plf.'s Motion for Partial Summary
Judgment – dkt. no. 31)

**I.    SUMMARY**

Before the Court is Plaintiff Alicia L. Limtiaco's ("Limtiaco") Motion for Partial Summary Judgment.  (Dkt. no. 31.)  The Court has also considered Defendant Auction Cars.com LLC's ("Auction Cars") Opposition and Limtiaco's Reply.[1]  For the reasons discussed below, the Motion is granted in part and denied in part.

**II.    BACKGROUND**

This case arises out of the alleged non-disclosure of information required by federal and state regulations relating to a used-car sale.  The following facts are not in dispute.

---

[1]Local Rule 7-4 establishes a 20 page limit for the reply brief.  Limtiaco failed to comply with this rule.  The Court cautions the parties that the Court will not consider a brief that exceeds the page limit.

On July 24, 2010, Limtiaco entered into a Motor Vehicle Purchase Order and Federal Disclosure Statement ("Agreement") with Auction Cars to purchase a 1992 GMC Yukon ("Vehicle").  (Dkt. no. 31, Ex. 1.)   The Vehicle's total cash selling price was $5952.85.[2]   (*Id.*)   Limtiaco agreed to a $2500.00 down payment on July 24, 2010, $500.00 of which was deferred until August 9, 2010.  (*Id.*)  The remaining balance of $3452.85 was to be paid in 18 bi-weekly payments of $191.74 beginning on August 24, 2010.  (*Id.*)  The contract provided that there was no finance charge.  (*Id.*)

Limtiaco made three additional payments: $300.00 on August 11, 2010, $200.00 on August 19, 2010, and $200.00 on September 14, 2010.  (Dkt. no 31, Ex. 2 at 3.)  Thereafter, Limtiaco failed to make a scheduled payment.  On September 28 or 29, 2010, Auction Cars delivered to Limtiaco a Notice of Intention to Sell and Right to Redeem Repossessed Motor Vehicle ("Notice of Disposition").  (Dkt. no 31, Ex. 6.)  The Notice of Disposition included the redemption address and phone number, redemption deadline, contract balance, late fee, repossession expense, total redemption amount, and Vehicle identification.  (*Id.*)   On November 2, 2010, Auction Cars sold the repossessed Vehicle for $4085.13 to a third party.  (Dkt. no 31, Ex. 2 at 7.)

Subsequently, Limtiaco sued Auction Cars, alleging both federal and state causes of action.  Limtiaco now moves this Court to grant partial summary judgment on three alleged federal Truth in Lending Act violations and two alleged violations of NRS Chapters 97 and 104.

**III.   DISCUSSION**

**A.   Legal Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and

---

[2]The breakdown is as follows:   $4995.00 selling price plus $495.00 for "doc accessories" plus $25.25 for "title motor vehicle & accessories" fee plus $404.62 for sales tax plus $30.00 for smog.

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment.  *Id.*  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor."  *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the ///

1  nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60
2  (1970).

3        In determining a summary judgment motion, the Court may only consider
4  admissible evidence.  Fed. R. Civ. P. 56(e), *Beyene v. Coleman Sec. Servs., Inc.*, 854
5  F.2d 1179, 1181 (9th Cir. 1988).  To be admissible, proper foundation must be laid and
6  documents must be authenticated. *Id.*, *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920,
7  925 (9th Cir. 1987).  In a summary judgment motion, documents authenticated through
8  personal knowledge must be "attached to an affidavit that meets the requirements of
9  [Fed.R.Civ.P.] 56(e) and the affiant must be a person through whom the exhibits could
10  be admitted into evidence." *Canada*, 831 F.2d at 925 (9th Cir. 1987).  Here, Limtiaco
11  has adequately authenticated all documents attached to the instant motion through her
12  affidavit.  (Dkt. no. 33, ex. 1.)  Thus, the Court considers all documents attached to the
13  instant motion.

14        **B.    Analysis**

15        Limtiaco argues that Auction Cars violated three provisions of the Truth in
16  Lending Act in addition to two violations under Nevada Statutes Chapters 97 and 104.

17              **1.    TILA Violations**

18        Limtiaco asks this Court to find that the federal Truth in Lending Act ("TILA")
19  applies to the subject transaction, that the transaction included a hidden finance charge,
20  and that Limtiaco is entitled to an award between $100 and $1000 for TILA violations.
21  Alternatively, Limtiaco asks this Court to find that Auction Cars violated multiple sections
22  of TILA Regulation Z.  As to the applicability of TILA, Auction Cars does not dispute that
23  TILA applies, but rather that Auction Cars did not violate TILA.  Therefore, for the
24  purposes of this analysis, the Court assumes TILA applies to the subject transaction.

25              **a.    Hidden Finance Charge**

26        A "hidden" finance charge may exist where the price charged is above true market
27  value.  For example, the Fifth Circuit held that, even though the contract states there was
28  no finance charge, the difference of $325.28 between the "highest figure customarily

4

charged in Alabama for similar merchandise during the relevant period" amounted to an undisclosed finance charge. *Killings v. Jeff's Motors, Inc.*, 490 F.2d 865 (5th Cir. 1974). To that end, the "buyer is required to prove by competent evidence the difference between the actual value of the item sold and the stated sale price." *Lawson v. Reeves*, 537 So.2d 15 (Ala. 1988).

Limtiaco offers Kelley Blue Book valuation of the car to show the actual value of the car was $3745.00.   Limtiaco argues that the difference of $1250.00 between $4995.00 (charged for the Vehicle) and $3745.00 (Kelley Blue Book suggested retail value) amounts to a hidden finance charge.  Auction Cars argues that Limtiaco does not account for the condition of the Vehicle or local demand for the Vehicle, which would support an upward departure from Kelley Blue Book value and an increase of the legitimate selling price of the Vehicle.

The Court agrees that if there was any difference between true market value and the price charged for the used Vehicle, that difference should have been disclosed at the time of sale as a finance charge.   However, Kelley Blue Book values only show suggested retail price and not "true market value" or the "highest figure customarily charged" for a similar vehicle in Nevada at the time of the sale.  Thus, Limtiaco has introduced insufficient evidence as to the true market value of the Vehicle, and the amount of the finance charge, if any, cannot be determined at this time.  As the factual resolution of the true market value of the Vehicle would change the outcome of this claim, summary judgment is improper.

### b.   Disclosure under TILA Regulation Z

TILA's implementing regulation, Regulation Z, sets out TILA's disclosure requirements. *See* 15 U.S.C. § 1601, 12 C.F.R. § 226.1.  Limtiaco argues that Auction Cars failed to make two disclosures required under Regulation Z. Namely, Limtiaco

///

///

///

1  argues Auction Cars failed to disclose the Amount Financed required under § 226.18(b)

2  and the Finance Charge required under § 226.18(d).[3]

3  ### i.    Amount Financed under § 226.18(b) and Finance Charge under § 226.18(d)

4

5  Congress enacted TILA "to assure a meaningful disclosure of credit terms so that

6  the consumer will be able to compare more readily the various credit terms available to

7  him and avoid the uninformed use of credit, and to protect the consumer against

8  inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601.   To

9  effectuate TILA's purpose, a court must construe "the Act's provisions liberally in favor of

10  the consumer" and require absolute compliance by creditors.  *Hauk v. JP Morgan Chase*

11  *Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009); *see also Jackson v. Grant*, 890 F.2d

12  118, 120 (9th Cir. 1989) ("Even technical or minor violations of the TILA impose liability

13  on the creditor.").

14  Regulation Z disclosures must reflect the "terms of the legal obligation between

15  the parties."  § 226.17(c)(1).   Regulation Z § 226.18(b) provides that "[f]or each

16  transaction, the creditor shall disclose . . . [t]he amount financed, using that term, and a

17  brief description such as *the amount of credit provided to you or on your behalf*."  §

18  226.18(b)(emphasis in original).  Regulation Z § 226.18(d) provides that "[f]or each

19  transaction, the creditor shall disclose . . . [t]he finance charge, using that term, and a

20  brief description such as 'the dollar amount the credit will cost you.'"

21  The question before the Court is whether the form used by Auction Cars

22  sufficiently satisfies the brief description requirements.   As the regulation does not

23  require exact language, the purpose behind the inclusion of a brief descriptor is to give

24  the debtor notice of her legal obligation.

---

26  [3]Limtiaco's Motion also included arguments for disclosure of Annual Percentage
27  Rate required under § 226.18(e) and an Itemization of Amount Financed required under
   § 226.18(c).  However, Limitiaco's Reply concedes that as to these two points, Auction
28  Cars complied with TILA.  (Dkt. no. 33 at 8).  Thus, the Court does not address these
   arguments further.

Based on the undisputed facts, Auction Cars' contract form did not give Limtiaco meaningful notice of her legal obligations.  The contract states the "cash price" of $5952.85, and the amount of "cash downpayment" of $2,500.00 of which $500.00 was "deferred."  (Dkt. no. 31.)  The contract also states "unpaid balance on cash price" and "unpaid balance – amount financed" of $3452.85.  (Dkt. no. 31.)  However, the contract term "unpaid balance" does not adequately convey the message or put Limtiaco on notice that the stated amount is "the amount of credit provided" to Limtiaco.

Additionally, while the finance charge was set at zero, the contract contains no descriptors as to finance charges and the contract does not adequately convey the message that the stated amount was the dollar amount the credit would cost Limtiaco. The contract lists the charges were calculated, but taken at face value does not give adequate descriptors of Limtiaco's legal obligations, and thus amounts to a technical violation of Regulation Z.  Therefore, summary judgment is granted as to liability.  The Court discusses damages below.

### ii.    Damages

15 USC § 1640(a) provides statutory civil liability for any creditor who fails to comply with Regulation Z.  Thus, in a consumer credit sale, the creditor's liability is twice the amount of any finance charge but not "less than $100 nor greater than $1,000."  15 U.S.C. § 1640(a)(2)(A)(i-ii), *see also Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50 (2004) (holding that the $1000.00 cap applies to both individual actions and consumer leases).

Here, the technical violation entitles Limtiaco to *at least* $100.00.  However, as the amount of the finance charge, if any, cannot be determined at this time (see "Hidden Finance Charge" discussion above), the Court cannot determine the actual amount of damages.

### 2.    NRS Chapter 97 Violations

Limtiaco asks this Court to find that Auction Cars failed to use the correct form of contract for credit sales of vehicles in violation of NRS Chapter 97 and NAC 97.110.

1    Nevada law provides that sale of a vehicle where "(a) The sale involves the taking
2    of a security interest to secure all or a part of the purchase price of the vehicle; (b) The
3    application for credit is made to or through the seller of the vehicle; (c) The seller is a
4    dealer; and (d) The sale is not a commercial transaction," the seller shall use forms for
5    the application for credit and contracts created by the Commissioner of Financial
6    Institutions ("Commissioner").   NRS §§ 97.299 & 97.305.   NAC § 97.110 provides that
7    the form listed therein must be used "in any sale of a vehicle if the sale is governed by [§
8    97.299] and simple interest is to be paid in connection with the sale."  NAC § 97.110.  A
9    seller who fails to use the prescribed forms "except as a result of an accidental or bona
10   fide error" may not recover "any finance charge, official fees, or any charge for
11   delinquency or collection" under the contract.  NRS § 97.305.

12   Limtiaco argues that there is no genuine issue of material fact that Auction Cars
13   failed to use the required form.  Auction Cars argues even if NRS § 97.299 applied,
14   because no simple interest was to be paid under the contract, NAC § 97.110 did not
15   require use of the form.

16   The Court notes Limtiaco's acknowledgement that the Commissioner "has failed
17   to create a discrete form for a sale in which interest is purportedly not charged."  (Dkt.
18   no. 33 at 17.)  Here, Auction Cars was not required to use the form because the NAC §
19   97.110 form is only required when simple interest is to be paid and there was no interest.
20   Therefore, Auction Cars is not in violation of the statute, and summary judgment is
21   denied.

22                    **3.      NRS Chapter 104 Violation**

23   Limtiaco asks this Court to find that Auction Cars' Notice of Disposition failed to
24   comply with NRS Chapter 104 and Limtiaco is entitled to damages not less than the
25   finance charge plus ten percent of the principal amount of the obligation.  Additionally,
26   Limtiaco asks this Court to find Auction Cars failed to provide the requisite accounting to
27   Limtiaco and that Limtiaco is entitled to the return of the surplus.
28   ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### a.    Notice of Intended Disposition

NRS Chapter § 104.9614(1) provides that in a consumer goods transaction, such as a car sale, the notification of disposition must include:

> (a)  The information specified in subsection 1 of NRS 104.9613;[4]
> (b)   A description of any liability for a deficiency of the person to which the notification is sent;
> (c)  A telephone number from which the amount that must be paid to the secured party to redeem the collateral under NRS 104.9623 is available; and
> (d)   A telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available.

NRS § 104.9614 subsection 3 provides one possible form of notification, but particular phrasing is not required.  *See* NRS § 104.9614(2-3).  "A notification in the form of subsection 3 is sufficient, even if it includes errors *in information not required by subsection 1*, unless the error is misleading with respect to rights arising under this article."  NRS § 104.9614(5) (emphasis added).

Limtiaco argues that Auction Cars' Notice of Disposition failed to state (1) the method of intended disposition, (2) that Limtiaco was entitled to accounting of the unpaid indebtedness and a charge, if any, for the accounting, and (3) the time and place of a public disposition or the time after which any disposition to be made.  Auction Cars responds that Auction Cars materially complied and any errors in the Notice of Disposition are excusable as the errors are not misleading.  The parties do not dispute that the letter dated September 28, 2010, was a notice of intended disposition, thus

///

---

[4]NRS §104.9613 provides in relevant part that the contents of a notification of disposition are sufficient if the notification:
> (a) Describes the debtor and the secured party;
> (b) Describes the collateral that is the subject of the intended disposition;
> (c) States the method of intended disposition;
> (d) States that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and
> (e) States the time and place of a public disposition or the time after which any other disposition is to be made.

9

there is no question of material fact.  Therefore, the Court only addresses whether the sent Notice of Disposition was sufficient as a matter of law.

Here, the Notice of Disposition was deficient in relation to the fourth requirement of accounting under NRS §104.9613, but the Notice of Disposition met the remaining requirements.  First, the Notice of Disposition described the debtor and secured party by addressing Limtiaco by name and address and the stationary header.  Second, the Notice of Disposition described the collateral by identifying the year, make, model, and VIN number of the Vehicle.  Third, the Notice of Disposition stated the method of intended disposition as "repossession" and "intent to sell the repossessed vehicle."  However, as to the fourth requirement, the Notice of Disposition was insufficient because it failed to state "that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting."  Nothing in the Notice of Disposition can be construed to convey that information to the debtor.  Fifth, the Notice of Disposition stated the time after which disposition was to be made by giving a "10/08/2010" expiration date.  Therefore, the Notice of Disposition was deficient only as to the fourth requirement.

In addressing Auction Cars' argument of material compliance and excusable error, the Court finds that the plain text of NRS § 104.9614(5) does not excuse any errors in subsection 1 required disclosures.  Therefore, Auction Cars violated the required disclosures by failing to include any information that Limtiaco was entitled to an accounting of the unpaid indebtedness.  The Court next turns its analysis to the calculation of damages.

### b.    Damages

When the Court finds the secured party is in violation of NRS Chapter 104, damages are limited to the amount of loss with three exceptions.  NRS § 104.9625(2).  One such exception provides that where the collateral is a consumer good, a debtor may recover "an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation."  NRS § 104.9625(3)(b).

1  Limtiaco argues she is entitled to 10 percent of the original $4995.00 contractual
2  obligation.  Auction Cars argues that even if the Court did find a violation, Limitiaco
3  would only be entitled to actual damages and she has provided no evidence of actual
4  damages.

5  Due to Auction Cars' Chapter 104 violation and pursuant to § 104.9652(3)(b),
6  Limtiaco is entitled to 10 percent of the principal amount of the obligation, plus the
7  "credit service charge."  However, Limtiaco mistakenly proposes that the "principal
8  amount of the obligation" was the original contract obligation.  As the statute remedies
9  notice of disposition violations, the principal balance could only be that at the time of the
10  Notice of Disposition.  Based on submitted admissible evidence, the parties agree that
11  the original contract amount was $5952.85 and that Limtiaco made a total of $2,700.00
12  in payments.  (Dkt. no. 31, Ex. 2 at 3.)  Even taking the facts in the light most favorable
13  to Auction Cars, the total principal obligation at the time of the Notice of Disposition was
14  $3252.85.  However, as the amount of the finance charge, if any, cannot be determined
15  at this time (see "Hidden Finance Charge" discussion above), the Court cannot
16  determine the actual amount of damages.  In any event, Limtiaco is entitled to $325.29,
17  which is ten percent of the principal balance plus any amount later found to be a
18  finance/credit service charge.

19  ### c.    Surplus from Disposition of Vehicle

20  After default, a secured party may dispose of the collateral to obtain cash
21  proceeds."  NRS § 104.9615(1).  After satisfying the debt obligation, the cash proceeds
22  should be applied to "the reasonable expenses of retaking, holding, preparing for
23  disposition, processing and disposing" the collateral.   NRS § 104.9615(1)(a).   Any
24  surplus must be accounted for and paid to the debtor.  NRS § 104.9615(4)(a).

25  ///
26  ///
27  ///
28  ///

1    Limtiaco argues that she is entitled to $1017.15.[5]   Auction Cars responds by

2    arguing that the total redemption amount due on the notice of disposition was $3997.85,

3    which would result in a deficiency and not a surplus.

4    Essentially the parties dispute what fees, if any, are recoverable by Auction Cars.

5    Limtiaco's argument relating to Auction Cars' ability to collect fees hinges on the Court's

6    finding that Auction Cars violated Chapter 97.   While this Court has found that Auction

7    Cars has not violated NRS § 97.299, this Court has not adjudicated Limtiaco's other

8    Chapter 97 claims.   Those outstanding factual questions preclude summary judgment

9    and, therefore, summary judgment is denied.

10   **III.   CONCLUSION**

11   IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary

12   Judgment is GRANTED in part and DENIED in part.   The Motion is granted as to

13   Regulation Z and NRS Chapter 104 violations, and denied as to TILA Hidden Finance

14   Charge, NRS Chapter 97 violations, and surplus from disposition of Vehicle under NRS

15   Chapter 104.

16   DATED THIS 15th day of October 2012.

19   UNITED STATES DISTRICT JUDGE

26   [5]Limtiaco arrives at the amount by calculating the remaining contract balance and
27   subtracting it from the amount for which the Vehicle was subsequently sold to a third
     party.  ($5952.85 cash price - $2000.00 down payment - $700.00 in payments made
     under the contract - $495.00 in uncollectable "doc fees" = $2757.85) ($3775 amount sold
28   to Parra - $2757.85 remaining balance = $1017.15).